IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID J. DESANTO                          3:11-CV-06075-MA

      Plaintiff,                         OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

      Defendant.

RICHARD F. MCGINTY
McGinty & Belcher
P.O. Box 12806
Salem, OR 97301
(503) 371-9636

     Attorneys for Plaintiff


S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1 - OPINION AND ORDER

BENJAMIN J. GROEBNER
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2494

    Attorneys for Defendant

MARSH, Judge.

    Plaintiff seeks judicial review of the Commissioner's final decision denying his December 19, 2006, application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-34 and supplemental security income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.

    Plaintiff claims he has been disabled since November 15, 2005, because of emphysema, heart disease, diabetes, high blood pressure, and hepatitis C.  His claim was denied initially and on reconsideration.

    On December 1, 2009, the Administrative Law Judge (ALJ) held an evidentiary hearing and on December 18, 2009, issued a Notice of Decision finding that although plaintiff has severe impairments related to coronary artery disease, chronic obstructive pulmonary disease (COPD), and obesity, he is capable of performing his past relevant work as a retail sales person and locksmith.  Accordingly, the ALJ found plaintiff is not disabled.

On January 28, 2011, the Appeals Council denied plaintiff's request for review.  The ALJ's decision, therefore, is the Commissioner's final decision for purposes of judicial review.

Plaintiff seeks an Order reversing the Commissioner's final decision and remanding the case either for the immediate payment of benefits or to obtain further evidence.

For the following reasons, the court **REVERSES** the final decision of the Commissioner and **REMANDS** this action to the Commissioner for further proceedings as set forth below.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled.  <u>Bowen v. Yuckert</u>, 482 U.S.137, 140 (1987).  <u>See also</u> 20 C.F.R. § 416.920. Plaintiff bears the burden of proof at Steps One through Four. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

At Step One, the ALJ found plaintiff had not engaged in substantial gainful activity since November 15, 2005.

At Step Two, the ALJ found plaintiff has severe impairments, including coronary artery disease, COPD, and obesity.  20 C.F.R. §§ 404.1520(c) and 416.920(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found plaintiff's impairments do not meet or equal any listed impairment.  He has the residual functional capacity (RFC) to perform light work that involves lifting and carrying 20 lbs occasionally and 10 lbs frequently, standing walking, and sitting, for up to 6 hours in an 8-hour work-day, with occasional climbing, balancing, kneeling, crouching, and crawling.

At Step Four, the ALJ found that, in light of his RFC, plaintiff is able to perform his past light semi-skilled work as a retail salesperson and light skilled work as a locksmith.

Accordingly, the ALJ found plaintiff is not disabled and, therefore, he is not entitled to DIB or SSI.

## LEGAL STANDARDS

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet this burden, the claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The court must affirm the Commissioner's decision if the ALJ applied proper legal standards and made findings supported by

substantial evidence in the entire record.   42 U.S.C. § 405(g).

"Substantial evidence" is "more than a mere scintilla but less

than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a

conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.

1995).

The court must weigh all of the evidence whether it supports

or detracts from the Commissioner's decision.   Martinez v.

Heckler, 807 F.2d 771, 772 (9th Cir. 1986).   The Commissioner's

decision must be upheld, however, even if the "evidence is

susceptible to more than one rational interpretation." Andrews,

53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record.

DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).   The duty

to further develop the record, however, is triggered only when

there is ambiguous evidence or when the record is inadequate to

allow for proper evaluation of the evidence.   Mayes v. Massanari,

276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or

for the immediate payment of benefits is within the discretion of

the court.   Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.),

cert. denied, 121 S. Ct. 628 (2000).   "If additional proceedings

can remedy defects in the original administrative proceeding, a

social security case should be remanded." <u>Lewin v. Schweiker</u>,
654 F.2d 631, 635 (9th Cir. 1981).

## DISCUSSION

Plaintiff asserts the ALJ erred by failing (1) to credit
plaintiff's testimony regarding the severity and limiting effects
of his impairments, (2) to credit lay evidence of plaintiff's
wife, (3) to credit treating physician Dan Alkadi, D.O.'s opinion
regarding the severity of plaintiff's impairments; (4) to find
plaintiff's COPD meets the requirements of Listing 3.02(C)(1),
(5) to find Plaintiff's sleep apnea is a severe impairment;
and (6) to include all of plaintiff's limitations in his RFC
determination.

## EVIDENCE

### Plaintiff's Testimony.

On the date of the hearing plaintiff was 50 years old.  He
has a 10th grade education.  He served in the army as a cargo
specialist and was honorably discharged.

Plaintiff last worked at a Wal-Mart store in November 2005
in the automotive department stocking, mounting and balancing
tires, changing oil, and washing cars.  He suffered a heart
attack at that time and has not worked since then.  Since the
heart attack, plaintiff has had two stents inserted.  His heart
condition is plaintiff's primary concern.

Since he left Wal-Mart, plaintiff has done some locksmith work that lasted for three-four weeks and he worked in the woods loading wood into a vehicle that lasted for two weeks.  The jobs ended because plaintiff could not adequately perform the tasks.

If plaintiff is working too fast or lifting too much, he feels pain in his back, and his elbows and hands will tingle, as they did when he had his first heart attack.  In the past he has retained water in his legs causing him to stand up or elevate them on and off throughout the day.  After sitting for 15-30 minutes, he needs to raise his legs or stand and walk around.

Plaintiff guessed he would have difficulty loading 20 lb logs onto a truck.  He would probably be able to tolerate a work environment where he was required to sit for an hour at a time if he was able to move around for 10 minutes during that hour.

Physical activity, including walking more than one or two blocks, brings on shortness of breath, causing plaintiff to sit down and rest.  He also has difficulty breathing unless he lays on his side.  He also becomes breathless when he talks.

Plaintiff does not sleep well because of restless leg syndrome, causing constant aching in his knees and upper hips. On those nights when he does sleep well, plaintiff feels good in the morning and is able to get "through a majority of the day" until he relaxes, "when everything just . . . hits [him]."  He

has five bad days for every good day.  On the good days, he might be able to work, but not consistently, because of shortness of breath.

**Lay Testimony**.

Plaintiff's daughter testified at the hearing.  Plaintiff has been living with her since shortly after he had his second heart attack in 2005.  He had an earlier heart attack in 2001 which did not prevent him from going back to work.

She notices plaintiff suffers pain and discomfort on a daily basis, which cause him to move and change positions constantly, whether he is sitting or standing.  For instance, he is able to cook for about 20 minutes before sitting down and resting.  He is also able to walk for approximately one block before he needs to rest and catch his breath.  It takes him approximately 15-20 minutes to walk that distance.  Occasionally, plaintiff stops breathing briefly when he is sleeping.

**Relevant Medical Treatment Evidence**.

**St. Charles Medical Center**.

In January 2005, plaintiff was admitted to the hospital complaining of increasing chest pain.  He had a history of coronary artery disease.  He was diagnosed with a myocardial infarction (heart attack), with questionable pneumonia and diabetes.  He underwent a cardiac catheterization.

**Samaritan North Lincoln Hospital.**

In May 2006, plaintiff complained of left foot pain.  His history was "significant for hypertension, coronary artery disease, and diabetes.  He advised the treating physician, however, he was "too lazy" to visit the VA doctor to obtain refills of medications prescribed for these conditions.  He was strongly advised not to run out of those medications.

In June 2006, plaintiff complained of coughing up blood and not feeling well.  Chest x-rays showed "bibasilar infiltrates consistent with congestive heart failure or interstitial inflammatory process."

**Veterans Administration Center.**

In December 2006, a Veterans Administration (VA) physician reviewed a sleep study performed on plaintiff and advised him he has "severe obstructive sleep apnea."  The physician noted plaintiff "responded well" to a continuous positive airway pressure (CPAP) mask, and urged him to use it every night.

In April 2007, following pulmonary functioning testing, plaintiff's DLCO (carbon monoxide diffusing capacity) reading was 39%.  The VA physician who examined plaintiff noted that reading without comment, "stressed the need for CPAP treatment," and diagnosed mild COPD with chronic bronchitis, obstructive sleep apnea, and congestive heart failure.

In March 2008, VA treating physician Dan Alkadi, M.D., in responding to a questionnaire presented by plaintiff's attorney, checked off that plaintiff suffered from Type 2 Diabetes, Sleep Apnea, Coronary Artery Disease, and COPD.  He also checked off that plaintiff's impairments related to coronary artery disease and COPD affected his ability to perform work-related physical activities.  Dr. Alkadi, however, was unable to opine whether those impairments affected plaintiff's ability to "independently, appropriately, effectively, and on a sustained basis in a competitive work environment, perform non-exertional work requirements."  (Emphasis in original).

Dr. Alkadi, however, also opined plaintiff would need "to take more frequent and longer breaks than those found in a traditional eight-hour work shift," i.e., "1 in the first 4 hours and 1 in the second 4 hours."  Plaintiff's "job performance will depend mostly on his symptoms during any given day."

In November 2008, x-rays of plaintiff's chest revealed his heart was enlarged, with pulmonary vascular congestion, and evidence of probable congestive heart failure.

In April 2009, plaintiff was treated for multiple disorders, including diabetes, morbid obesity, coronary artery disease, COPD, smoking, high cholesterol, and hepatitis C.  He was urged to stop smoking.  He had difficulty using a CPAP mask to help him sleep at night.

In May 2009, plaintiff was still having difficulty using the CPAP mask because he had difficulty breathing through the nose.

In July 2009, plaintiff was not using inhalers or his CPAP mask routinely as recommended to assist his breathing.  He was encouraged to do so and to lose weight.

**Medical Consultation Evidence**.

> **Neal E. Berner, M.D. - Family Practitioner.**
> **Sharon B. Eder, M.D. - Internal Medicine.**

Dr. Berner reviewed plaintiff's medical records and, based on those records, concluded plaintiff was only partially credible in describing his functional limitations because the objective medical evidence reflects his symptoms improved with treatment and when he took his medications as prescribed.  Dr. Berner recommended  plaintiff lose weight and exercise more.  He opined plaintiff has the RFC to balance frequently and climb, stoop, kneel, crouch, and crawl occasionally.  With these physical capacities, plaintiff should be able to lift 20 lbs occasionally and 10 lbs frequently, stand, walk, and/or sit for up to six hours in an 8-hour workday, and push/pull up to 10 lbs on an unlimited basis.  Dr. Eder concurred in that assessment.

**Vocational Expert (VE) Testimony**.

The VE opined if plaintiff is capable of lifting and carrying 20 lbs occasionally and 10 lbs frequently, standing, walking and sitting for six hours, and stooping, kneeling,

crouching, or crawling occasionally, he would be able to perform
his past relevant work as a locksmith and retail sales-person.
He would not be able to perform the latter job, however, if he
was required to stock shelves or needed more than one break in
the morning and one in the afternoon.

**ANALYSIS**

1.  **Rejection of Plaintiff's Testimony**.

Plaintiff contends the ALJ failed to give clear and
convincing reasons for not crediting his testimony regarding
the severity of his physical impairments.    The court agrees.

A claimant who alleges disability based on subjective
symptoms "must produce objective medical evidence of an
underlying impairment 'which could reasonably be expected to
produce the pain or other symptoms alleged. . . .'" Bunnell v.
Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C.
§ 423(d)(5)(A) (1988)). See also Cotton v. Bowen, 799 F.2d 1403,
1407-08 (9th Cir. 1986).  The claimant need not produce objective
medical evidence of the symptoms or their severity. Smolen v.
Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant produces objective evidence that underlying
impairments could cause the pain complained of and there is not
any affirmative evidence to suggest the claimant is malingering,
the ALJ is required to give clear and convincing reasons for

rejecting plaintiff's testimony regarding the severity of his symptoms. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283. To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284 (citations omitted).

Here, there is no evidence that plaintiff is malingering. Moreover, the ALJ acknowledged plaintiff's physical impairments could reasonably be expected to cause some of his physical symptoms. The ALJ, however, concluded plaintiff's self-described daily activities, including taking care of his personal needs, preparing meals, doing light housekeeping, laundry, taking out the garbage, going for walks, handling money, engaging in social activities, occasionally hunting, fishing, and lifting 20 lbs, are "somewhat greater" than he has reported.

The ALJ also concluded the medical evidence reflected that plaintiff's coronary artery disease was stable and controlled by medication, and his COPD was mild. The ALJ referred to findings

13 - OPINION AND ORDER

relating to these conditions as "minimal."  In addition, in determining that the medical evidence did not support a finding of disability, the ALJ relied on the opinion of consulting physician Neal Berner, M.D., who noted medical records reflected plaintiff's symptoms improved when he took his prescriptions.

On this record, the court finds the ALJ's reasons for discrediting plaintiff's testimony are not clear or convincing.

The ALJ purportedly relied on plaintiff's daily activities set forth in plaintiff's Adult Function Report to draw the conclusion that plaintiff is more active than he suggests in his testimony.  The ALJ, however, ignored qualifiers in that report that the meals plaintiff prepares are sandwiches and frozen dinners that are quickly prepared because plaintiff cannot stand long enough to prepare a full meal, that it takes him all day to complete twice weekly house and yard work because he needs to take breaks, that he can only walk one-half block before his leg, knees, and feet "swell and ache," and that he becomes short of breath when he climbs stairs.  The ALJ also wrote that plaintiff hunts and fishes occasionally and "maybe" lifts 20 lbs.  The ALJ, however, ignored Plaintiff's testimony that he no longer hunted and fished and he would have difficulty loading 20 lb logs on a truck.

Nevertheless, the Commissioner contends the record supports the ALJ's finding that plaintiff is able to do more strenuous

physical activity than he claims, based on his work in the woods for two weeks and his work as a locksmith.  The Commissioner, however, ignored plaintiff's testimony that he did those jobs to make money to survive and, after a short time, was unable physically to continue doing either of them.

On this record, the court concludes the Commissioner did not give clear and convincing reasons for not crediting plaintiff's testimony regarding the severity of his impairments.  There is abundant medical evidence to support plaintiff's diagnoses of congestive heart failure resulting in coronary artery disease and COPD that significantly limit his daily activities.

The court, however, also notes VA medical records reflect plaintiff did not follow his physicians' advice to lose weight, use inhalers, and routinely use a CPAP mask to assist his breathing while sleeping.  The ALJ did not address this issue in making his credibility determination.

## 2.   **Rejection of Lay Witness Evidence**.

Plaintiff contends the ALJ erred by failing to give germane reasons for not fully crediting the lay evidence offered by plaintiff's daughter regarding his physical capabilities.

Lay witness evidence regarding a claimant's symptoms "is competent evidence that an ALJ must take into account" unless he "expressly determines to disregard such testimony and gives

reasons germane to each witness for doing so." <u>Lewis v. Apfel</u>,
236 F.3d 503, 511 (9th Cir. 2001).

The ALJ found plaintiff's daughter's evidence regarding
plaintiff's physical limitations and difficulties, which included
plaintiff's difficulty sleeping at night, catching his breath,
and needing to rest after short periods of activity, was not
credible for the same reasons plaintiff's testimony on the same
subject matter was not credible.

The court concludes the ALJ's reasons for rejecting the
evidence presented by plaintiff's daughter are not germane for
the same reasons the ALJ erred in rejecting plaintiff's testimony
regarding the severity of his impairments.

## 3.   <u>Treating Physician Dan Alkadi, M.D.,'s Opinion</u>.

The ALJ adopted the recommendations of consultant physicians
over the opinion of Dr. Alkadi, who treated plaintiff, because
Dr. Alkadi "did not indicate any clinical findings to support
his conclusion" that plaintiff's ability to work "will depend
mostly on his symptoms during any given day."  Moreover, the
ALJ reasoned that Dr. Alkadi's "assessment did not indicate
[plaintiff] is disabled," and "did not preclude work at the light
level" subject to certain postural limitations.

Generally, the opinions of treating physicians are given
greater weight than those of other physicians, because treating

physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir.2007); *Smolen v. Chater,* 80 F.3d 1273, 1285 (9th Cir.1996). The uncontradicted opinion of a treating physician is entitled to controlling weight, and may be rejected only for clear and convincing reasons supported by substantial evidence in the record. *See Lester v. Chater,* 81 F.3d 821, 831 (9th Cir.1996). Even if a treating physician's opinion is contradicted by other substantial evidence, the physician's opinion is still entitled to deference and may be rejected only for specific and legitimate reasons supported by substantial evidence. *Lester,* 81 F.3d at 830; *Orn,* 495 F.3d at 6313.

Contrary to the ALJ's interpretation of his statements, Dr. Alkadi unequivocally opined that plaintiff would need "to take more frequent and longer breaks than those found in a traditional eight-hour work shift."

On this record, the court concludes the ALJ did not give specific and legitimate reasons for crediting the evidence of consulting physicians as to plaintiff's ability to engage in substantial gainful activity, and not crediting the opinion of Dr. Alkadi, who treated plaintiff. The court is not convinced by the Commissioner's argument that Dr. Alkadi's opinion was properly rejected because Dr. Alkadi did not explain the basis

for his opinion.   It is true that Dr. Alkadi's ultimate opinion was "brief and conclusory," *i.e.,* provided in a questionnaire. Nevertheless, it was based on his personal examination and treatment of plaintiff over a significant period of time unlike the opinions of the consulting physicians who never examined plaintiff.

The court, however, also notes Dr. Alkadi did not address plaintiff's failure to follow advice to use inhalers and a CPAP machine to ameliorate his COPD symptoms, and to lose weight.   The court is unclear whether Dr. Alkadi would stand by his opinion that plaintiff would need "to take more frequent and longer breaks than those found in a traditional eight-hour work shift" if plaintiff had followed his doctors' advice.

**4.    Plaintiff's COPD - Listing 3.02(C)(1).**

Plaintiff contends he is disabled as a matter of law because his COPD impairment meets the requirements of Listing 3.02(C)(1).

On April 13, 2007, plaintiff's DLCO (carbon monoxide diffusing capacity) reading was 39 percent.   Under Listing 3.02(C)(1), a claimant with a DLCO reading of 40% or less is considered disabled.   The attending VA physician at the time noted that reading without comment and "stressed the need for CPAP treatment."   Nevertheless, he diagnosed only "mild COPD with chronic bronchitis, obstructive sleep apnea, and congestive heart failure."

The Commissioner asserts other DLCO readings were not less than 40 percent. *See e.g.,* a July 5, 2006 report reflecting a DLCO reading of 49 percent.

The court concludes a single DLCO reading under 40%, not replicated in further testing, is insufficient to establish that plaintiff's COPD meets the requirements of a Listed Impairment. The court, however, notes a second DLCO reading of 49%, while not meeting a Listing requirement, as well as the medical records as a whole, suggests plaintiff does indeed have a significant pulmonary insufficiency.

Nevertheless, as set forth above, there is an issue as to whether plaintiff failed to follow his doctors' advice in order to ameliorate his COPD symptoms.

5.   **Plaintiff's Sleep Apnea**.

Plaintiff contends the ALJ erred in not finding his sleep apnea is a severe impairment. The ALJ pointed to medical evidence that plaintiff responded well when he used a CPAP breathing mask and that plaintiff's sleep would improve if he lost weight and quit smoking. The record, however, reflects plaintiff purported to have difficulty adjusting to and using the CPAP machine and, as of May 2009, had stopped using it.

On this record, the Court concludes the ALJ did not err in finding plaintiff's sleep apnea is not a severe impairment in

light of the clear evidence that plaintiff did not fully comply with his doctors' treatment recommendations, which would have at least ameliorated that condition.

## 6.  **Plaintiff's RFC**.

For each of the reasons set forth above, and in particular, after crediting Dr. Alkadi's opinion, the court concludes the ALJ erred in finding plaintiff has the RFC to perform light work that would include lifting and carrying 20 lbs occasionally and 10 lbs frequently, standing and/or walking for six hours in an eight-hour workday, with occasional climbing, stooping, kneeling, crouching, and crawling.

Nevertheless, the Court also concludes issues relating to Plaintiff's failure to comply his doctors' recommendations regarding the use of inhalers and CPAP mask, and the need to lose weight, calls into question Dr. Alkadi's opinion regarding Plaintiff's need to take breaks during the course of the workday, if plaintiff were to comply with those treatment recommendations.

For that reason, the Court concludes a remand of this matter for further proceedings is appropriate to afford Dr. Alkadi the opportunity to address whether Plaintiff's compliance with his doctors' treatment recommendations regarding the use of inhalers, the CPAP machine, and loss of weight, would enable him to work without the need to take more frequent and longer breaks than those found in a traditional eight-hour work shift.

## CONCLUSION

For these reasons, the court **REVERSES** the Commissioner's final decision denying plaintiff's claim for DIB and SSI benefits to plaintiff and **REMANDS** this matter to the Commissioner for further proceedings as set forth above.

IT IS SO ORDERED.

DATED this _18_ day of April, 2012.

_Malcolm F. Marsh_
MALCOLM F. MARSH
United States District Judge